**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIO CALDERON, *et al.*, <br><br>                            Plaintiffs, <br><br>     v. <br><br> CLEARVIEW AI, INC., *et al.*, <br><br>                          Defendants. | **DAVID MUTNICK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AND TO DISMISS OR, ALTERNATIVELY, TO STAY CASES OR TRANSFER VENUE** <br> ━━━━━━━━━━━━━━━━━━━ <br><br> Civil Action No.: 1:20-cv-01296-CM |
| MARIA BROCCOLINO, <br><br>                            Plaintiff, <br><br>     v. <br><br> CLEARVIEW AI, INC. <br><br>                          Defendant. | Civil Action No.: 1:20-cv-02222-CM |
| JOHN McPHERSON, <br><br>                            Plaintiff, <br><br>     v. <br><br> CLEARVIEW AI, INC., *et al.*, <br><br>                          Defendants. | Civil Action No.: 1:20-cv-03053-CM |
| SEAN BURKE, *et al.*, <br><br>                            Plaintiff, <br><br>     v. <br><br> CLEARVIEW AI, INC., *et al.,* <br><br>                          Defendants. | Civil Action No.: 1:20-cv-03104-UA |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 2

ARGUMENT ................................................................................................................ 9

I.      The Court Should Allow Mutnick to Intervene in the
        *Southern District Cases* .................................................................................... 9

        A.      Legal Standards ...................................................................................... 9

        B.      The Court Should Permit Mutnick to Intervene as of Right .................. 10

                1.      Mutnick's Motion Is Timely ........................................................ 10

                2.      Mutnick Has an Interest in the *Southern District Cases* ............ 11

                3.      Absent Intervention, Disposition of the *Southern District
                        Cases* May, as a Practical Matter, Impair or Impede Mutnick's
                        Ability to Protect His and Class Members' Interests ................... 11

                4.      The Parties to the *Southern District Cases* May Not Adequately
                        Represent Mutnick's Interests or Those of Class Members ........ 12

        C.      Alternatively, the Court Should Permit Mutnick to Intervene .............. 13

II.     Under the First-Filed Rule, the Court Should Dismiss the *Southern
        District Cases* or, Alternatively, Stay or Transfer Them ................................. 14

        A.      Legal Standards .................................................................................... 14

        B.      *Mutnick* Is the First-Filed Case, and His Case Involves Substantially
                Similar Parties and Issues as the *Southern District Cases* .................. 15

        C.      There Is No Basis to Depart from the First-Filed Rule ......................... 16

        D.      The Court Should Dismiss the *Southern District Cases* ..................... 19

III.    The Court Should Transfer the Cases Pursuant to Fed. R. Civ. P. 1404(a) ...... 19

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Costco Wholesale Corp & Nice-Pak Products, Inc.*,
234 F.Supp.3d 367 (E.D.N.Y. 2017) ...........................................................................16, 17, 18, 19

*Askin v. Quaker Oats Co.*, No. 11 CV 111,
2011 WL 5008524 (N.D. Ill. Oct. 20, 2011)...........................................................................13, 14

*Broccolino v. Clearview AI, Inc.*, 1:20-cv-2222-CM........................................................1, 2, 6, 13

*Burke v. Clearview AI, Inc.*, 1:20-cv-3104-CM................................................................... *passim*

*Calderon v. Clearview AI, Inc.*, 1:20-cv-1296-CM ............................................................. *passim*

*Christa McAuliffe Interm. School PTO, Inc. v. de Blasio*, No. 18 Civ. 11657 (ER),
2020 WL 1432213 (S.D.N.Y. Mar. 24, 2020) ...............................................................................12

*Constellation Leasing, LLC v. Oxford Aviation, Inc.*, No. 08-CV-6558,
2010 WL 1323566 (W.D.N.Y. Mar. 29, 2010)...............................................................................14

*Dickstein v. Able Telecom Holding Corp.*, 192 F.R.D. 331 (N.D. Ga. 2000).........................11, 13

*Employers Ins. of Wasau v. Fox Entertainment Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008)...........................................................................................................16

*First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) .......................14, 15

*Goggins v. Alliance Capital Mgmt., L.P.*, 279 F.Supp.2d 228 (S.D.N.Y. 2003)....................16, 17

*Hall v. Clearview AI, Inc.*, No. 1:20-cv-846 (N.D. Ill.)....................................................................5

*Manier v. L'Oreal USA, Inc.*, No. 2:16-cv-06886-ODW-KS,
2017 WL 59066 (C.D. Cal. Jan. 4, 2017) ...............................................................................13, 15

*McPherson v. Clearview AI, Inc.*, 1:20-cv-3053-CM ..................................................1, 2, 7, 10, 13

*Mutnick v. Clearview AI, Inc.*, 1:20-cv-512 ("*Mutnick*")  .................................................... *passim*

*Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85 (S.D.N.Y. 2018) ........................................9, 10, 11

*Roberson v. Clearview AI, Inc.*, No. 1:20-cv-111-RDA-MSN (E.D. Va.) ....................................13

*Sotheby's, Inc. v. Minor*, No. 08 Civ. 7694 (BSJ)(HBP),

2009 WL 73134 (S.D.N.Y. Jan. 6, 2009) ...............................................................14, 16

*Tate-Small v. Saks, Inc.*, No. 12 CV 1008 (HB),
2012 WL 1957709, at *2 (S.D.N.Y. May 31, 2012).........................................................14

## STATUTES

740 ILCS § 14/1, *et seq.*.....................................................................................1, 6, 8

## RULES

Federal Rule of Civil Procedure 24 ................................................................. *passim*

Federal Rule of Civil Procedure 1404 ...............................................................16, 19

## OTHER AUTHORITIES

Ryan Mac, *et al.*, *Clearview's Facial Recognition App Has Been Used by the
Justice Department, ICE, Macy's Walmart, and the NBA*,
Buzzfeed News (Feb. 27, 2020), https://www.buzzfeednews.com/article/
ryanmac/clearview-ai-fbi-ice-global-law-enforcement ...................................................4

Ryan Mac, *et al.*, *Secret Users of Clearview AI's Facial Recognition Dragnet
Included a Former Trump Staffer, a Troll, and Conservative Think Tanks*,
Buzzfeed News (Mar. 25, 2020), https://www.buzzfeednews.com/article/ryanmac/
clearview-ai-trump-investors-friend-facial-recognition ..............................................18

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, David Mutnick moves to: (a) intervene in four class action lawsuits pending before this Court; and (b) to dismiss those cases pursuant to the first-filed rule or, alternatively, stay the cases or have them transferred to the Northern District of Illinois where Mutnick's first-filed case, *Mutnick v. Clearview AI, Inc.*, 1:20-cv-512 ("*Mutnick*"), is pending.  The four cases at issue are: (a) *Calderon v. Clearview AI, Inc.*, 1:20-cv-1296-CM ("*Calderon*"); (b) *Broccolino v. Clearview AI, Inc.*, 1:20-cv-2222-CM ("*Broccolino*"); (c) *McPherson v. Clearview AI, Inc.*, 1:20-cv-3053-CM ("*McPherson*"); and (d) *Burke v. Clearview AI, Inc.*, 1:20-cv-3104-CM ("*Burke*") (collectively, the "*Southern District Cases*").  The named defendants in *Mutnick* are Clearview AI, Inc. ("Clearview"), Hoan Ton-That, Richard Schwartz and CDW Government, LLC ("CDW-G") (collectively, "Defendants") (Clearview, Ton-That and Schwartz, collectively, the "Clearview Defendants").  Each *Southern District Case* names the same Defendants, in whole or in part.

 As discussed in detail below, *Mutnick* and the *Southern District Cases* arise out of the Defendant Clearview's conduct in: (a) unlawfully scraping billions of facial images from the internet; (b) performing facial scans of those images; and (c) creating a biometric database (the "Biometric Database") that allows users of the database to immediately identify a member of the public merely by uploading a person's image to the database (collectively, the "Unlawful Conduct").  The other defendants assisted Clearview in carrying out its scheme and distributing the Biometric Database.  Each case has an Illinois plaintiff and alleges violations of the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1, *et seq.* ("BIPA"), among other claims.

Mutnick filed his lawsuit on January 22, 2020 and seeks certification of nationwide and Illinois classes.  *Calderon* was filed on February 13, 2020, followed by *Burke* on February 27,

2020, *Broccolino* on March 12, 2020 and *McPherson* on April 15, 2020.  The named-plaintiffs and putative class members in the *Southern District Cases* are members of one or both of the putative classes alleged in *Mutnick*.

To date, no substantive action has taken place in any case except *Mutnick*.  On April 8, 2020, Mutnick filed a motion for preliminary injunction seeking to enjoin the Clearview Defendants from: (a) further BIPA violations; and (b) continuing to collect Illinois residents' biometric identifiers and information without implementing requisite security measures.  The parties are briefing the motion with the response and reply due on May 6 and 20, 2020, respectively.

Despite not having assisted with the preliminary injunction motion or taken any action to move the *Southern District Cases* forward, on April 9, 2020, counsel in *Calderon* sought to be appointed interim class counsel.  This Court declined to rule on the motion.

The Court should: (a) grant *Mutnick's* motion to intervene; and (b) dismiss the *Southern District Cases* without prejudice or, alternatively, stay the *Southern District Cases*, pending resolution of *Mutnick*, or transfer the cases to the Northern District of Illinois.  Absent the requested intervention, multiple proceedings with substantially similar parties and issues will move forward in multiple judicial districts, wasting resources and prejudicing Mutnick and the putative class members defined in his case (the "Class Members").

### FACTUAL BACKGROUND

**Defendants**

**The Clearview Defendants**

Defendant Clearview is a Delaware corporation.   Declaration of Scott R. Drury ("Declaration") at Exhibit A (*Mutnick* Am. Compl. ¶13) and Exhibit B (Delaware Dep't of State

record)).  While Defendant Clearview claims to be headquartered in New York, according to public records, it does not appear that it is registered to do business in that state.  *Id.* at Exhibit C (New York State Department of State record).  Defendants Ton-That and Schwartz are principles of Defendant Clearview and acted in conspiracy with Clearview with respect to the Unlawful Conduct alleged in the *Mutnick* Complaint.  *Id.* at Exhibit A, ¶¶14, 18.

**Defendant CDW-G**

Defendant CDW-G is an Illinois limited liability company, with its principal place of business in Vernon Hills, Illinois.  *Id.* at Exhibit D (Illinois Secretary of State record).  Defendant CDW-G procured the Biometric Database for the Chicago Police Department, exposing Illinois citizens to ongoing surveillance and other privacy harms.  *See id.* at Exhibit a, ¶19.

Defendant CDW-G's website (https://cdwg.com) contains a link for "Investor Relations" which takes a viewer to a CDW Corporation website (https://investor.cdw.com/overview/default.aspx).  *Id.*, ¶4.  According to CDW Corporation's 2019 Annual Report, its 2019 net sales were $18 billion.  *Id.* at Exhibit E (2019 CDW Annual Report).

**The Complaints**

**Mutnick's First-Filed Complaint**

On January 22, 2020, Illinois resident David Mutnick filed a class action complaint against the Clearview Defendants, alleging multiple BIPA and civil rights violations.  *See id.* at Exhibit H.  Based on the continued investigation by Mutnick's counsel, CDW-G was identified as an additional defendant.  On January 29, 2020, Mutnick filed a First Amended Complaint (the "*Mutnick* Complaint") in which he added CDW-G as a defendant.  *Id.* at Exhibit A.

3

As alleged in the *Mutnick* Complaint, the Clearview Defendants have scraped over 3 billion facial images from the internet and scanned the facial geometry – *i.e.*, the biometric identifiers and information – of each individual.  *Id.* at Exhibit A, ¶¶2, 36.  The Clearview Defendants also built a searchable database of the scanned images – *i.e.* the Biometric Database – thereby enabling database users to instantly identify unknown individuals using nothing more than a photo.  *Id.*, ¶¶2, 36, 38-39, 41.

A person with access to the Biometric Database can upload a face image of an unknown person to the database, and the database will then: (a) match that face with images in the database; and (b) provide the user with information the Clearview Defendants have amassed about the person.  *See id.*  According to an article published in *Buzzfeed News*, over 500,000 face searches have been performed with the Biometric Database, including 9,000 by the Illinois Secretary of State's Office.[1]  The Chicago Police Department also purchased access to the Biometric Database. *See* Declaration at Exhibit F (Clearview Invoice) and Exhibit G (Chicago Police Department Purchase Order for Biometric Database).

The Clearview Defendants do not verify that the individuals whose images are contained in the Biometric Database ever consented to the widespread sharing, biometric cataloguing and monetization of their images, nor is there any evidence to suggest anyone consented.  *See id.* at Exhibit A, ¶¶31-32, 42, 44, 46.  Further, the Clearview Defendants do not notify individuals that their image is contained in the Biometric Database and do not seek consent to perform biometric scans on the images.  *See id.*

---

[1] Ryan Mac, *et al.*, *Clearview's Facial Recognition App Has Been Used by the Justice Department, ICE, Macy's Walmart, and the NBA*, Buzzfeed News (Feb. 27, 2020) ("*Clearview's Facial Recognition App Use*"), https://www.buzzfeednews.com/article/ryanmac/clearview-ai-fbi-ice-global-law-enforcement (last accessed on Apr. 21, 2020).

The *Mutnick* Complaint seeks certification of the following nationwide and Illinois classes, respectively: (a) "All American citizens whose biometric identifier or information is or was contained in the Clearview database described herein" (the "Nationwide Class"); and (b) "All persons who reside or resided in Illinois whose biometric identifier or information is or was contained in the Clearview database described herein" (the "Illinois Class"). *Id.*, ¶58. The *Mutnick* Complaint alleges: (a) multiple BIPA and civil rights violations; and (b) unjust enrichment. *Id.*, ¶¶68-130. Mutnick also seeks injunctive relief. *Id.*, ¶¶131-136

**The *Hall* Complaint**

On February 5, 2020, another action was filed in the Northern District of Illinois arising out of the same facts alleged in the *Mutnick* Complaint and naming Clearview and CDW-G as defendants. Declaration, ¶6. The case is captioned *Hall v. Clearview AI, Inc.*, No. 1:20-cv-846 (N.D. Ill.) ("*Hall*"). *Id.* Mutnick has moved to have *Hall* reassigned as a case related to *Mutnick*. *Id.* The motion is pending. *Id.* The law firms in *Mutnick* and *Hall* are both based in Illinois. *Id.*

**The *Calderon* Complaint**

On February 13, 2020, a San Francisco-based law firm with local New York counsel filed a case in New York, naming Illinois residents Mario Calderon and Jennifer Rocio as putative class representatives for Illinois citizens. *Calderon*, ECF 1. The complaint: (a) arises out of the same facts alleged in the *Mutnick* Complaint; (b) alleges a violation of Illinois' BIPA; (c) names Clearview and CDW-G as defendants; and (d) alleges a class that is substantially similar to Mutnick's Illinois Class, *i.e.*, "all individuals who, while residing in the state [sic] of Illinois, had their biometric identifiers captured, collected, or obtained by Clearview at any point during the preceding five years." *Id.* The *Calderon* plaintiffs are members of the classes alleged in the *Mutnick* Complaint.

**The *Broccolino* Complaint**

On March 12, 2020, a New York-based law firm also seeking to represent the affected Illinois citizens against Defendant Clearview, filed a lawsuit in New York on behalf of Illinois resident Maria Broccolino. *Broccolino,* ECF 1. The complaint arises out of the same facts alleged in the *Mutnick* Complaint and alleges the same counts alleged in *Mutnick*. *Compare Broccolino*, ECF 1 *with* Declaration at Exhibit A. Indeed, Broccolino copied most of her allegations from the *Mutnick* Complaint.[2] *Compare Broccolino*, ECF 1, ¶¶21-26, 28-33-35, 40-44, 48, 54-96 *with Mutnick*, ECF 6, ¶¶21-26, 31-36, 42-45, 47, 62, 93-136. The *Broccolino* complaint names Clearview as a defendant and alleges a class that is substantially similar to Mutnick's Illinois Class, *i.e.*, "all persons residing in Illinois whose facial geometry was scanned by Defendant Clearview and subsequently sold, leased, traded, disclosed, redisclosed or otherwise used by Clearview to profit without Clearview having complied with BIPA's requirements." *Broccolino*, ECF 1, ¶¶46, 54-81. Plaintiff Broccolino is a member of the classes alleged in the *Mutnick* Complaint.

**The *Burke* Complaint**

On February 27, 2020, a San Diego-based law firm filed a complaint naming Illinois resident James Pomerene and California resident Sean Burke, and subsequently amended the complaint on April 7, 2020. *Burke*, ECF 1, 6. The *Burke* complaint: (a) arises out of the same facts alleged in the *Mutnick* Complaint; (b) alleges violations of Illinois' BIPA, unjust enrichment and violations of certain California statutes; (c) names Clearview, Ton-That and Schwartz as defendants; and (d) alleges a "BIPA Class" that is substantially similar to Mutnick's Illinois Class, *i.e.,* "All persons in the United States who had their Illinois Biometric Information collected,

---

[2] *Broccolino* actually copied Mutnick's original complaint which inadvertently and incorrectly cited to 740 ILCS §§ 14/15(b) and (a) in Counts Eight and Nine, respectively, when the citations should have been reversed. Declaration, ¶7 and Exhibit H (Orig. Mutnick Compl.), ¶¶98-111. The *Broccolino* plaintiffs copied the mistaken citations. *Broccolino*, ECF 1, ¶¶68-81.

captured, purchased, received, obtained, sold, leased, traded, disclosed, redisclosed, disseminated, and/or otherwise profited from and/or used by Clearview without their consent." *Burke*, ECF 6, ¶51.  Plaintiff Pomerene is a member of the classes alleged in the *Mutnick* Complaint.  Plaintiff Burke is a member of the Nationwide Class alleged in the *Mutnick* Complaint.

The *Burke* plaintiffs originally filed their case in the Southern District of California.  *See Burke*, ECF 1.  However, after the Clearview Defendants moved to transfer venue to the Southern District of New York (*Burke*, ECF 3-4), the *Burke* plaintiffs agreed to the transfer.  *Burke*, ECF 10.  The case was docketed in this District on April 17, 2020.  *Burke*, ECF 12.

### The *McPherson* Complaint

On April 15, 2020, the same San Diego-based firm in *Burke* filed a case in New York seeking to represent the same class of Illinois victims as in *Burke*, this time naming Illinois resident John McPherson as the putative class representative.  *McPherson*, ECF 1.  The complaint: (a) arises out of the same facts alleged in the *Mutnick* Complaint; (b) alleges violations of Illinois' BIPA and unjust enrichment and also seeks declaratory relief; (c) names Clearview, Ton-That and Schwartz as defendants; and (d) alleges a "BIPA Class" that is substantially similar to Mutnick's Illinois Class, *i.e.*, "All persons in the United States who had their Illinois Biometric Information collected, captured, purchased, received, obtained, sold, leased, traded, disclosed, redisclosed, disseminated, and/or otherwise profited from and/or used by Clearview without their consent." *Id.* Plaintiff McPherson is a member of the classes alleged in the *Mutnick* Complaint.

### Mutnick's Motion for Preliminary Injunction

On April 8, 2020, Mutnick filed a motion and supporting exhibits totaling 27-pages seeking to have Judge Coleman preliminarily enjoin the Clearview Defendants from continuing to: (a) violate Illinois' BIPA; and (b) possess the biometric identifiers and information of Illinois residents

without taking adequate and reasonable measures to ensure the security of those identifiers and information.   Declaration at Exhibit I (Preliminary Injunction Memorandum of Law).   The following day, lawyers in *Calderon* moved this Court to appoint them interim class counsel, making no mention of the injunction pending before Judge Coleman. *Calderon*, ECF 17-18.  Judge Coleman has ordered the Clearview Defendants to respond on or before May 6, 2020, and Mutnick to file any reply on or before May 20, 2020.  *Id.* at Exhibit J (Apr. 8, 2020 Order).   On April 17, 2020, in the wake of news of a massive Clearview security breach, Mutnick filed a Notice of Supplemental Factual Information in Support of Motion for Preliminary Injunction.  *Id.* at Exhibit K (Notice of Supp. Factual Information).

**No Party Has Taken Any Substantive Action in the *Southern District Cases***

No substantive progress has been made in the *Southern District Cases* since the filing of the various complaints.   The only action taken by any of the plaintiffs came in response to Mutnick's preliminary injunction when counsel for the *Calderon* plaintiffs moved this Court for appointment as interim class counsel without mentioning the injunction.  *Calderon*, ECF 17-18. For the record, counsel for the *Calderon* plaintiffs provided no assistance with the preliminary injunction motion before Judge Coleman.  Declaration, ¶9.

This Court declined to take action on the application.  *Id.*, ECF 21.  In a written order, the Court expressed doubt as to whether the *Southern District Cases* (there were two at the time of the Order) belonged in the Southern District of New York and indicated that it would "certainly have to consider seriously any motion that might be made to transfer the case . . .  to either the Northern or Southern District of Illinois":

> It is not at all clear to me that these cases belong in this court.  They arise under an Illinois statute, the Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*.  They are brought on behalf of a class of persons who, while residing in the State of Illinois, had certain "biometrics" . . . "scraped" by Defendants and

used without their consent in violation of the Illinois statute.  While it is possible that some members of the putative class no longer reside in Illinois, it is beyond cavil that the Illinois statute applies only to Illinois residents and that the vast majority of class members presently reside in that state.  Moreover, one of the defendants in the Calderon case is an Illinois citizen.

Defendants have made no motions as yet, but this court would certainly have to consider seriously any motion that might be made to transfer the case . . . to either the Northern or Southern District of Illinois.

*Id.*

**Other Work Performed by Mutnick and His Counsel**

In addition to filing the preliminary injunction motion, Mutnick and his counsel have vigorously pursued this matter.  They have gathered over 1,000 pages of documents concerning Clearview and its database, with additional Freedom of Information Act requests to multiple public agencies outstanding.  Declaration, ¶8.  The responsive documents revealed the Clearview Defendants' efforts to solicit Illinois customers, including a proposal made to the Chicago Police Department and a purchase order issued by the Chicago Police Department.  *Id.* at Exhibit F, G.

## ARGUMENT

**I.    The Court Should Allow Mutnick to Intervene in the *Southern District Cases*.**

**A.    Legal Standards.**

Federal Rule of Civil Procedure 24 allows a party to intervene in an existing matter as of right or with the court's permission.  Fed. R. Civ. P. 24.  To intervene as of a right, a movant must: (a) timely file a motion; (b) assert an interest relating to the property or transaction at issue; (c) show that absent intervention the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect his interests; and (d) demonstrate that the other parties do not adequately represent the movant's interests.  *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018); Fed. R. Civ. P. 24(a).

Alternatively, pursuant to Rule 24(b), "[o]n timely motion" of a movant, a court may permit a movant to intervene where: (a) the movant "has a claim or defense that shares with the main action a common question of law or fact"; and (b) the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *see also Olin Corp.*, 325 F.R.D. at 87. Courts are to liberally construe Rule 24(b), with the principle consideration being the possibility of undue delay or prejudice. *See Olin Corp.*, 325 F.R.D. at 87. Courts may also consider the facts that guide the determination as to whether a party may intervene as of right. *Id.*

**B.     The Court Should Permit Mutnick to Intervene as of Right.**

**1.     Mutnick's Motion Is Timely.**

In determining whether a movant has timely filed his motion to intervene, a court should consider: (a) when the movant learned of his interest in the matter as compared to when he filed the motion; (b) any prejudice to the existing parties from a movant's delay in filing the motion; (c) any prejudice to the movant if his motion is denied; and (d) whether any unusual circumstances exist that weigh for or against a finding of timeliness. *Id.* Courts have found motions to intervene timely where they are filed within a few months of the movant learning of the claims at issue. *Id.* at 88.

Mutnick has timely filed this motion. The date of the earliest filed *Southern District Case* was February 13, 2020 (*Calderon*). *McPherson* and *Burke* were not filed in this Court until April 15 and 17, 2020, respectively. Thus, at most, a little over two months elapsed before Mutnick filed this motion. During that time, no substantive action has occurred in any of the *Southern District Cases*, and no responsive pleadings have been filed. As such, even if Mutnick delayed in filing the motion, that delay will not prejudice any of the parties to the *Southern District Cases* if the

court grants this motion. On the other hand, if the Court denies the motion, Mutnick will suffer prejudice as discussed in the analysis of the other factors below.

### 2.     Mutnick Has an Interest in the *Southern District Cases*.

To have an interest in a case under Rule 24(a), the interest must be direct, substantial and legally protectable. *Id.* Mutnick satisfies this requirement. *Mutnick* and the *Southern District Cases* are competing class actions, with overlapping classes, claims, parties and legal and factual issues. As a result, this Court and the Northern District of Illinois will be called upon to decide identical legal issues. Mutnick has a direct, substantial and legally protectable interest in how the legal issues are decided in the *Southern District Cases*. *See Dickstein v. Able Telecom Holding Corp.*, 192 F.R.D. 331, 334 (N.D. Ga. 2000).

### 3.     Absent Intervention, Disposition of the *Southern District Cases* May, as a Practical Matter, Impair or Impede Mutnick's Ability to Protect His and Class Members' Interests.

Courts are sympathetic as to whether the matter in which a movant seeks to intervene may, as a practical matter, impair or impede the movant's ability to protect his interests. *Olin Corp.*, 325 F.R.D. at 89. Courts look with a practical eye at the effect of the matter on the movant's interests. *Id.*

As discussed above, absent intervention, the interests of Mutnick and Class Members may be impaired or impeded by adverse or inconsistent rulings in the *Southern District Cases.* This concern is especially acute, here, where counsel for *Calderon* has shown a greater interest in being appointed interim lead counsel than in litigating the substantive issues in the case. In other words, Mutnick cannot be confident that counsel in the *Southern District Cases* will advocate with the necessary vigor and zeal to avoid adverse rulings.

>   **4.  The Parties to the *Southern District Cases* May Not Adequately Represent Mutnick's Interests or Those of Class Members.**

In general, a movant's burden to show that his interests may not be adequately represented is minimal.  *Id.*  However, where the movant and an existing party share the same objective, it is presumed that the existing party will adequately represent the intervenor's interests.  *Christa McAuliffe Interm. School PTO, Inc. v. de Blasio*, No. 18 Civ. 11657 (ER), 2020 WL 1432213, at *5 (S.D.N.Y. Mar. 24, 2020).  While there is no definitive rule regarding what showing a movant must make to rebut the presumption, evidence of collusion, incompetence, adversity of interest or nonfeasance may suffice.  *Id.*

Mutnick and the plaintiffs in the *Southern District Cases* nominally share the same objective of holding Defendants accountable for their violations of BIPA and their overall unlawful conduct.  As such, the presumption of adequate representation applies.  However, that presumption is vitiated by the facts in this case.

First, the self-interest displayed by counsel in *Calderon*, as discussed above, is adverse to the interests of Mutnick and Class Members.  The conduct of *Calderon's* counsel has forced *Mutnick's* counsel to divert limited resources that could have been used to advance Class Members' interests to efforts to protect this case from further non-productive interference – such as filing this motion.  Mutnick's counsel must now carefully be on the lookout for other attempts to sabotage or interfere with the *Mutnick* case.

Second, there is an inference of collusion between plaintiffs in the *Southern District Cases* and Defendants.  Even though each of the *Southern District Cases* involves an Illinois plaintiff, an Illinois statute and Illinois class members, each case was filed in, or transferred by agreement to, the Southern District of New York.  Even as *Mutnick* progressed, the plaintiffs in the *Southern District Cases* made no effort to move their cases to the Northern District of Illinois.  Instead,

12

counsel in *Calderon* sought to be appointed interim lead counsel, McPherson filed a new complaint in this District, and the *Burke* plaintiffs agreed with the Clearview Defendants to transfer their case to this District. This conduct aligns with the expressed interest of the Clearview Defendants who have proactively sought to transfer two cases to this District: (a) *Burke*; and (b) *Roberson v. Clearview AI, Inc.*, No. 1:20-cv-111-RDA-MSN (E.D. Va.) ("*Roberson*").[3] *See Burke*, ECF 3-4; Declaration at Exhibit L (*Roberson* – Defendant Clearview's Motion to Transfer).

 Finally, the fact that *Broccolino's* counsel copied much of Mutnick's complaint is evidence of their inexperience with the claims at issue, as well as their inability to properly prosecute those claims.

Mutnick has satisfied the four factors for determining whether intervention as of right is appropriate. The Court should grant his motion.

### C. Alternatively, the Court Should Permit Mutnick to Intervene.

To the extent the Court does not find that Mutnick can intervene as of right, it should nevertheless permit him to intervene under Rule 24(b). As discussed above, *Mutnick* and the *Southern District Cases* share common claims (BIPA), based on common facts, that are alleged on behalf of common class members against common defendants. *See Manier v. L'Oreal USA, Inc.*, No. 2:16-cv-06886-ODW-KS, 2017 WL 59066, at *2 (C.D. Cal. Jan. 4, 2017) (permitting intervention where complaints alleged the same defects with the same product against the same defendant); *see also Dickstein*, 192 F.R.D. at 334 (granting intervention as of right and permissive intervention); *Askin v. Quaker Oats Co.*, No. 11 CV 111, 2011 WL 5008524, at *5-6 (N.D. Ill. Oct. 20, 2011) (permitting intervention where there was substantial overlap between facts and issues in the cases).

---

[3] *Roberson* alleges violations of Virginia statutes. *Roberson* does not have an Illinois plaintiff or allege a BIPA violation. *Roberson*, ECF 1.

Moreover, intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).  Indeed, *Mutnick* is the only case where a substantive action has been taken to protect Class Members.  Moreover, Mutnick's counsel have demonstrated that they will vigorously and zealously advocate on behalf of the National and Illinois Classes – which include the plaintiffs in the *Southern District Cases*.  Thus, far from prejudicing plaintiffs, Mutnick's intervention will benefit them.

Because *Mutnick* and the *Southern District Cases* share common claims and facts, and because the plaintiffs in the *Southern District Cases* will not suffer any prejudice from Mutnick's intervention, the Court should grant Mutnick's motion.  As set forth in § I.B, above, the Rule 24(a) factors further support this conclusion.

## II.     Under the First-Filed Rule, the Court Should Dismiss the *Southern District Cases* or, Alternatively, Stay or Transfer Them.

### A.     Legal Standards.

It is well-settled that where two competing lawsuits involving the same or substantially similar parties and issues have been filed in different federal courts, the first suit should have priority absent special circumstances or a showing of balance of convenience giving priority to the later filed case.  *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989); *Tate-Small v. Saks, Inc.*, No. 12 CV 1008 (HB), 2012 WL 1957709, at *2 (S.D.N.Y. May 31, 2012) (class action), *Sotheby's, Inc. v. Minor*, No. 08 Civ. 7694 (BSJ)(HBP), 2009 WL 73134, at *1 (S.D.N.Y. Jan. 6, 2009); *Constellation Leasing, LLC v. Oxford Aviation, Inc.*, No. 08-CV-6558, 2010 WL 1323566, at *3 (W.D.N.Y. Mar. 29, 2010). The first-to-file or first-filed rule "embodies considerations of judicial administration and conservation of resources."  *Simmons*, 878 F.2d at 80.  The party seeking to "deviate from the first-filed rule has the burden of demonstrating that circumstances justifying an exception exist."  *Sotheby's, Inc.*, 2009 WL 73134, at *1.  Dismissal

14

is an appropriate remedy under the first-filed rule.  *See Simmons*, 878 F.2d at 80 (dismissal without prejudice)

> **B.** ***Mutnick* Is the First-Filed Case, and His Case Involves Substantially Similar Parties and Issues as the *Southern District Cases*.**

*Mutnick* is the first-filed case.  He filed his initial and amended complaints before the filing of any complaints in the *Southern District Cases.*

Further, *Mutnick* and the *Southern District Cases* involve substantially similar parties and issues.  Regarding parties, *Mutnick* names Clearview, Ton-That, Schwartz and CDW-G as defendants.  Those same defendants, in whole or in part, are named in each of the *Southern District Cases*.  Moreover, each case involves the same or a similar class of Illinois victims.  *Mutnick* and *Burke* also allege nationwide classes.  In class actions, courts assess the similarity of the classes, not the class representatives.  *Manier*, 2017 WL 59066, at *3.

As for the issues, each case arises out of Defendant Clearview's conduct in unlawfully: (a) scraping billions of images from the internet – including images of Mutnick, plaintiffs and Class Members; (b) performing biometric scans of those images; and (c) disseminating and profiting from the biometric identifiers and information of Mutnick, plaintiffs and Class Members via the Biometric Database.  Based on these common facts, *Mutnick* and the *Southern District Cases* each allege a violation of BIPA, among other claims.

Given that *Mutnick* is the first-filed case and the similarity of the parties and issues, absent special circumstances or balance of convenience, the Court should dismiss the *Southern District Cases* or, alternatively, stay them or transfer them to the Northern District of Illinois.

**C.**      **There Is No Basis to Depart from the First-Filed Rule.**

Here, neither special circumstances nor balance of convenience justifies departure from the first-filed rule.  Courts have described "special circumstances" as those involving manipulative or deceptive behavior such as forum shopping or filing an anticipatory declaratory judgment action. *See Sotheby's, Inc.*, 2009 WL 73134, at *1.  Courts evaluate balance of convenience by looking to the factors considered in determining whether to transfer venue under Federal Rule of Civil Procedure 1404(a), namely: (a) plaintiff's choice of forum; (b) convenience of witnesses; (c) the location of relevant documents and relative ease of access to sources of proof; (d) convenience of the parties; (e) the locus of operative facts; (f) the availability of process to compel the attendance of unwilling witnesses; (g) the relative means of the parties; (h) the relative familiarity of the courts with the applicable law; and (i) the interests of justice, including the interests of trial efficiency. *See Employers Ins. of Wasau v. Fox Entertainment Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008)*; see also Goggins v. Alliance Capital Mgmt., L.P.*, 279 F.Supp.2d 228, 232 (S.D.N.Y. 2003).

No special circumstances justify departure from the first-filed rule.  Mutnick did not file an action for declaratory relief in anticipation of a substantive lawsuit being filed against him.  Moreover, Mutnick did not engage in forum shopping.  Mutnick is an *Illinois resident* who filed an action in an *Illinois federal court* for violations of an *Illinois statute* that protects *Illinois citizens* and caused him harm.

Examination of the transfer of venue factors demonstrates that balance of convenience does not justify departure from the first-filed rule.  The core determination under Rule 1404(a) is the center of gravity of the litigation.  *See Armstrong v. Costco Wholesale Corp & Nice-Pak Products, Inc.*, 234 F.Supp.3d 367, 371 (E.D.N.Y. 2017).  As this Court noted in its April 15, 2020 Order, the center of gravity for the cases at issue is Illinois.

16

As a threshold matter, while the plaintiffs in the *Southern District Cases* filed their lawsuits in, or agreed to transfer their cases to, this District, their choice of forum is not entitled to much weight because each lawsuit is a class action (and filed after the original Illinois case). *See Goggins*, 279 F.Supp.2d at 232. Their choice of forum is entitled to even less weight because the facts giving rise to their lawsuits have no material relation or significant connection to New York. *See Armstrong*, 234 F.Supp.3d at 371. Again, the center of gravity is Illinois. Thus, the choice of forum factor does not favor either party.

The convenience of witnesses and parties favors transfer to the Northern District of Illinois. The Clearview Defendants targeted their unlawful conduct at Illinois governmental agencies, including the Illinois Secretary of State and Chicago Police Department. Mutnick presently anticipates calling members of these public bodies as witnesses to describe their use of the Biometric Database and its cost. Declaration, ¶5. Moreover, each plaintiff, save one, is an Illinois resident. The non-Illinois resident is from California, not New York. *See Burke*, ECF 6, ¶10. Further, Defendant CDW-G is an Illinois limited liability company, headquartered in Illinois.

While the Clearview Defendants claim ties to New York, those ties do not offset the overwhelming number of Illinois parties and witnesses. Moreover, Clearview's ties to New York are questionable given that it does not appear that it is registered to do business in New York. *See* Declaration at Exhibit C. As such, the witnesses and party factors favor application of the first-filed rule.

Similarly, because so many witnesses are from Illinois, proceeding in this District will result in the inability to compel unwilling witnesses to testify at court proceedings. Accordingly, this factor also favors application of the first-filed rule.

The relative familiarity of the courts with the applicable law further favors application of the first-filed rule. *Mutnick* and the *Southern District Cases* will require application and interpretation of Illinois' BIPA. A federal court in Illinois is likely more experienced and better positioned to interpret and apply an Illinois statute than a federal court in New York. *See Armstrong*, 234 F.Supp.3d at 370 (finding it more appropriate for an Oregon district court to interpret and apply an Oregon statute).

The parties' relative means and the interests of justice also favor application of the first-filed rule. Mutnick and Class Members are individuals who unwittingly became the subjects of Defendants' biometric scheme. In contrast, Defendant CDW-G is part of CDW Corporation, an entity that had $18 billion in sales last year. While the Clearview Defendants are more secretive about their revenues, they: (a) are represented by multiple attorneys at Jenner and Block, a large international law firm; and (b) according to published reports, have received funding from billionaire investor Peter Thiel.[4] Given the financial wherewithal of Defendants and the fact that their conduct resulted in these lawsuits, Defendants cannot credibly contend that the means and justice factors favor keeping the cases in this District.

The remaining factors either support application of the first-filed rule or are neutral. Given that Illinois is the center of gravity for each case, it is likely that relevant non-electronic documents will be located in Illinois. That being said, given the nature of the cases, Mutnick anticipates that many documents will be electronic and easily transferable, thereby negating the significance of the factor.

---

[4] Ryan Mac, *et al.*, *Secret Users of Clearview AI's Facial Recognition Dragnet Included a Former Trump Staffer, a Troll, and Conservative Think Tanks*, Buzzfeed News (Mar. 25, 2020), https://www.buzzfeednews.com/article/ryanmac/clearview-ai-trump-investors-friend-facial-recognition (last accessed on Apr. 21, 2020).

Regarding the locus of operative facts, Defendants inflicted harm on Illinois plaintiffs and Class Members.  Unlike a car accident, inquiry into the harm does not necessarily require a visit to the "scene of the crime."  Instead, Defendants' wrongful conduct will likely be evidenced in electronically-stored information, thus, negating the importance of the factor.

       **D.**      **The Court Should Dismiss the *Southern District Cases*.**

As set forth above, dismissal is a proper remedy under the first-filed rule.  Because *Mutnick* was the first-filed case and because there is no reason to depart from application of the rule, the Court should dismiss the *Southern District Cases* without prejudice.  To the extent the Court does not dismiss the *Southern District Cases*, it should stay the cases pending resolution of *Mutnick* or, alternatively, transfer the cases to the Northern District of Illinois.

**III.**    **The Court Should Transfer the Cases Pursuant to Fed. R. Civ. P. 1404(a).**

In the event the Court determines that the first-filed rule does not apply, pursuant to Federal Rule of Civil Procedure 1404(a), it should order the transfer of the *Southern District Cases* to the Northern District of Illinois for the reasons set forth above.  Moreover, to the extent the Court does not allow Mutnick to intervene in the *Southern District Cases*, he respectfully suggests that the Court order the requested transfer *sua sponte.  See Armstrong*, 234 F.Supp.3d at 369-70 (E.D.N.Y. 2017) (court may transfer case *sua sponte*).

## CONCLUSION

The Court should allow Mutnick to intervene in the *Southern District Cases* as of right or, alternatively, with the permission of the Court.  Moreover, under the first-filed rule, the Court should dismiss the *Southern District Cases* or, alternatively, stay those cases or transfer them to the Northern District of Illinois.  If the Court does not apply the first-filed rule, it should transfer the *Southern District Cases* to the Northern District of Illinois pursuant to Rule 1404(a).

Dated: April 21, 2020

Respectfully submitted,

DAVID MUTNICK

By:   /s/ Karen Newirth
      KAREN NEWIRTH
      *One of David Mutnick's Attorneys*

Karen Newirth (NY Bar No. 4115903)
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243-5900
karen@loevy.com

## <u>CERTIFICATE OF SERVICE</u>

Karen Newirth, an attorney, certifies that on April 21, 2020, she served a true and correct copy of the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Karen Newirth                          
KAREN NEWIRTH