**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIO CALDERON, *et al.*,<br><br>                              Plaintiffs,<br><br>    v.<br><br>CLEARVIEW AI, INC., *et al.*,<br><br>                              Defendants. | Civil Action No.:  1:20-cv-01296-CM |
| MARIA BROCCOLINO,<br><br>                              Plaintiff,<br><br>    v.<br><br>CLEARVIEW AI, INC.<br><br>                              Defendant. | Civil Action No.:  1:20-cv-02222-CM |
| JOHN McPHERSON,<br><br>                              Plaintiff,<br><br>    v.<br><br>CLEARVIEW AI, INC., *et al.*,<br><br>                              Defendants. | Civil Action No.:  1:20-cv-03053-CM |
| SEAN BURKE, *et al.*,<br><br>                              Plaintiff,<br><br>    v.<br><br>CLEARVIEW AI, INC., *et al.*,<br><br>                              Defendants. | Civil Action No.:  1:20-cv-03104-CM |

**DEFENDANTS CLEARVIEW AI, INC., HOAN TON-THAT, AND**
**RICHARD SCHWARTZ'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DAVID MUTNICK'S MOTION TO INTERVENE AND TO DISMISS OR,**
**ALTERNATIVELY, TO STAY CASES OR TRANSFER VENUE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 4

    A.   New York Has The Strongest Connection To This Dispute ........................................ 4

    B.   Mutnick's Claims Have No Relevant Connection To Illinois .................................... 5

    C.   Plaintiffs File Similar Lawsuits Over The Next Three Months .................................. 6

    D.   Mutnick's Motion For Preliminary Injunction ......................................................... 7

    E.   Mutnick's Motion To Intervene ................................................................................. 7

    F.   The Clearview Defendants Have Moved to Dismiss the Illinois Actions for
        Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue ............................ 8

ARGUMENT .......................................................................................................................... 9

I.     The New York Actions Should Not Be Dismissed ....................................................... 9

    A.   Legal Standard ........................................................................................................... 9

    B.   The Clearview Defendants Are Not Subject to Personal Jurisdiction in
        Illinois ..................................................................................................................... 10

    C.   No Substantive Progress Has Been Made in Any Case ........................................... 11

    D.   The Operative Facts Occurred in New York ........................................................... 12

    E.   The Convenience of Parties and Witnesses Favors New York ................................. 14

    F.   Plaintiffs in the New York Actions Selected New York as a Forum ....................... 15

    G.   Other Factors Are Negligible or Neutral ................................................................. 15

II.    Alternatively, The Court Should Defer Decision on Mutnick's Motion to Dismiss ........ 16

CONCLUSION ...................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Advanced Water Techs. Inc. v. Amiad U.S.A., Inc.*,
No. 18-CV-5473 (VSB), 2019 WL 4805330 (S.D.N.Y. Sept. 30, 2019) ...............................16

*AIDS Serv. Ctr. of Lower Manhattan, Inc. v. PharmBlue LLC*,
No. 14-CV-2792 SAS, 2014 WL 3778200 (S.D.N.Y. July 30, 2014) .............................10, 15

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
474 F. Supp. 2d 474 (S.D.N.Y. 2007) ...........................................................................9, 11, 12

*Atl. Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009) .................................................................................15

*Bear Stearns & Co. v. Tottenham Corp.*,
No. 92 Civ. 4005 (JES), 1992 WL 365380 (S.D.N.Y. Dec. 2, 1992) ....................................10

*Columbia Pictures Indus., Inc. v. Schneider*,
435 F. Supp. 742 (S.D.N.Y. 1977) .....................................................................................10

*First City Nat'l Bank & Trust Co. v. Simmons*,
878 F.2d 76, 80 (2d Cir. 1989) ........................................................................................9, 11

*First City Nat. Bank & Trust Co. v. Simmons*,
No. 88 CIV. 3117 (CSH), 1988 WL 125682 (S.D.N.Y. Nov. 4, 1988)...................................16

*Gokhberg v. The Pnc Fin. Servs. Grp., Inc.*,
No. 15 CV 6001-LTS, 2015 WL 9302837 (S.D.N.Y. Dec. 21, 2015) .............................10, 13

*Gullen v. Facebook, Inc.*,
772 F. App'x 481 (9th Cir. 2019).........................................................................................15

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010)...............................................................................................................13

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*,
119 F. Supp. 2d 433 (S.D.N.Y. 2000)............................................................................ *passim*

*Lynch ex rel. Tr. of Health & Welfare Fund of Patrolmen's Benevolent Ass'n of City of
New York & Retiree Health & Welfare Fund of Patrolmen's Benevolent Ass'n of City
of New York v. Nat'l Prescription Adm'rs*,
No. 03 CIV. 1303 (GBD), 2004 WL 385156 (S.D.N.Y. Mar. 1, 2004) .................................14

*Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
306 F. Supp. 2d 346 (S.D.N.Y. 2004)..................................................................................10

*River Rd. Int'l, L.P. v. Josephthal Lyon & Ross Inc.*,
   871 F. Supp. 210 (S.D.N.Y. 1995) ........................................................................14

*Santana v. Take-Two Interactive Software, Inc.*,
   717 F. App'x 12 (2d Cir. 2017) ...........................................................................15

Defendants Clearview AI, Inc. ("Clearview"), Hoan Ton-That, and Richard Schwartz (collectively, the "Clearview Defendants") respectfully submit this memorandum of law in opposition to David Mutnick's motion to intervene and to dismiss or, alternatively, to stay cases or transfer venue.

## INTRODUCTION

Clearview is a small technology company with its headquarters, principal place of business, and most of its employees in New York City.  From its offices in Manhattan, the company collects photos that are publicly available to anyone with access to the internet.  It downloads those photos into a searchable database, which is stored on servers in New York and New Jersey.  Through the Clearview app, licensed law enforcement agencies around the country can access the database.

Over the last three months, plaintiffs have filed eight nearly identical federal putative class action complaints against Clearview.  Because all of Clearview's challenged business practices related to the collection, processing, and searching of the photos in the database took place in New York (or New Jersey), and because New York is the only forum that has personal jurisdiction over all of the Clearview Defendants, the majority of these cases were either filed in or voluntarily transferred to the Southern District of New York ("New York Actions").

Proposed intervenor, Mutnick, however, is in the minority of plaintiffs who continue to pursue their cases elsewhere.  Mutnick accuses Clearview of serving as an "agent of law enforcement" in a national conspiracy to violate the rights of millions of Americans and impose "a massive surveillance state" on our nation.  In a maneuver that appears to be designed for little else than to secure appointment as lead plaintiff and lead plaintiffs' counsel, Mutnick filed the instant motion to intervene in the New York Actions and to dismiss or transfer these cases to the Northern District of Illinois ("Illinois Actions").  As a basis for his motion, Mutnick relies heavily on the "first-filed rule."  But as Mutnick's own authority confirms, the Second Circuit—like the

Seventh Circuit—regards this "rule" as only a "principle" that can be considered to the extent that it advances "considerations of judicial administration and conservation of resources." *Calderon*, ECF No. 23 ("Mutnick Br.") at 14 (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)).  As Mutnick acknowledges, courts do not apply a first-filed rule where the "balance of convenience" favors the "later filed case." *Id.*  The relevant considerations here do not support deference to Mutnick's first-filed case.

The Clearview Defendants have filed a motion to dismiss the Illinois Actions for lack of personal jurisdiction or, alternatively, to transfer venue.  Ex. 1.[1]  The complaints in the Illinois Actions do not contain a single allegation connecting Messrs. Ton-That and Schwartz to Illinois through any action of theirs independent of Clearview.  To the contrary, it is indisputable that Messrs. Ton-That and Schwartz are residents of New York who do not work, own property, pay taxes, or regularly travel to Illinois.  In fact, they have never even been to Illinois to conduct Clearview business.

Nor is Clearview subject to personal jurisdiction in Illinois.  The company does not have any employees, real estate, servers, facilities, or offices in Illinois; it is not registered to do business in Illinois; and it does not market or advertise its technology in Illinois.  None of its challenged business practices took place in Illinois.  Most of the so-called jurisdictional allegations in the Illinois Actions focus on the activities of plaintiffs or third parties.  And to the extent that Clearview is alleged to have contracted with Illinois parties so that they could become licensed users of Clearview's app, those alleged contracts are extraneous to the question of personal jurisdiction. The fact that the *Mutnick* action was filed first is beside the point, because jurisdiction over the Clearview Defendants is lacking in Illinois.

---

[1] Citations to "Ex." refer to exhibits to the Declaration of Lee S. Wolosky, dated April 29, 2020.

It is also beside the point because New York is clearly the "center of gravity" of these disputes: (1) all of the Clearview Defendants are undisputedly subject to jurisdiction in New York; (2) Clearview is undisputedly headquartered in New York; (3) the activities relevant to this case (*i.e.*, Clearview's challenged business operations—including specifically the collection, processing, searching, and storing of images) took place in New York (or New Jersey); (4) Clearview's employees are in New York; (5) the relevant evidence is located, accessed, or managed in New York (or New Jersey); (6) the majority of litigations against Clearview are in New York; and (7) by filing his motion to intervene, Mutnick has already demonstrated his ability and willingness to litigate in New York.

Moreover, no inefficiencies would result from proceeding in New York because no substantive activity has taken place in any of these cases—Clearview has not answered any complaints, no court has issued any substantive ruling, there have been no hearings, and discovery has not commenced. Although Mutnick points out that he recently filed a preliminary injunction motion, he waited almost three months before filing the motion in the middle of a pandemic while in a contest with other plaintiffs' lawyers over lead counsel status. In fact, the same week Mutnick filed his preliminary injunction motion, lawyers in *Calderon* filed a motion to be appointed interim class counsel. *Calderon*, ECF No. 17. In addition, the Clearview Defendants have requested that the court in Illinois stay any further proceedings on the motion for preliminary injunction until the issue of personal jurisdiction is resolved. *Mutnick*, ECF No. 53.

For these reasons and those that follow, the Court should deny Mutnick's motion to dismiss, transfer, or stay the New York Actions. Alternatively, the Court should defer decision on Mutnick's motion until after Judge Coleman in the Northern District of Illinois decides the Clearview Defendants' motion to dismiss for lack of personal jurisdiction or to transfer the Illinois Actions to New York. Deferring a ruling by the Court pending Judge Coleman's ruling on

Defendants' motion to dismiss will further judicial economy and help inform the Court's determination, because if the Illinois Actions are dismissed, Mutnick's first-filed argument and argument for transfer will become moot.

Finally, the Clearview Defendants take no position on Mutnick's request to intervene in the New York Actions.   However, the Clearview Defendants categorically reject Mutnick's contention that "there is an inference of collusion between plaintiffs in the *Southern District Cases* and Defendants."  Mutnick Br. at 12.  The fact that certain plaintiffs either chose to file in New York or agreed to transfer the cases to New York merely shows that they wanted to avoid litigating unnecessary and expensive jurisdictional issues, and knew that New York was the most appropriate forum.

## BACKGROUND

### A.    New York Has The Strongest Connection To This Dispute

Clearview is a Delaware corporation with its headquarters and principal place of business in New York.  Clearview collects publicly available images on the internet and organizes them into a searchable database, which can then be searched on an online app by licensed users.  Ex. 3 ¶ 6.  Clearview has fewer than ten full-time employees, almost all of whom work in New York, and none of whom are in Illinois.  *Id.*  ¶ 8.  Clearview hosts the data necessary for its business on servers located in New York and New Jersey.  *Id.*  ¶ 9.

Clearview's technology searches the "open web" and public sources for image files, and downloads the files and webpage URL into a database.  *Id.*  ¶ 7.  The files Clearview retrieves are accessible to any individual with an internet connection anywhere in the world.  Any images collected by Clearview were collected from its place of business in New York, and would be stored on servers that reside in New York or New Jersey.  *Id.* ¶ 9.

Ton-That and Schwartz respectively manage technology and sales for the company, and Ton-That also serves as the company's chief executive officer.  Ton-That and Schwartz are both residents of New York with no meaningful contacts with Illinois.  *Id.*  ¶¶ 2–3; Ex. 4 ¶¶ 2–3.

### B.     Mutnick's Claims Have No Relevant Connection To Illinois

In his operative complaint, Mutnick does not allege that the Clearview Defendants took any specific actions directed towards any Illinois citizens, including Mutnick.  Rather, Mutnick's allegations confirm that any theoretical connection to Illinois is through his own conduct, and the conduct of third parties.  For example, Mutnick alleges that he is a resident of Illinois; that he uploaded his images to publicly-accessible social media websites; that Clearview collected and obtained images of Mutnick and Illinois citizens "from millions of websites"; and that third-party users in Illinois obtained licensed access to Clearview's database.  *See Mutnick*, ECF No. 6 ("*Mutnick* FAC") ¶¶ 12, 17, 27–30.

The only two allegations Mutnick does make as to *Clearview's* conduct are that: (1) Clearview allegedly "markets" its app in Illinois, and (2) Clearview has allegedly "entered into service agreements" with law enforcement agencies, including at least one in Illinois.  *Id.*  ¶¶ 17, 39.  These allegations are both fatally flawed.  Clearview does not target its advertising or marketing to Illinois.  Ex. 3 ¶ 11.  Clearview's online app is marketed and available throughout the United States.  *Id.*; *Mutnick* FAC ¶ 13.  With respect to the allegation that Clearview contracted with Illinois counterparties, Mutnick fails to allege that he was specifically harmed by that conduct other than a vague—and false—allegation that Clearview profits from and disseminates biometric information to its users.  Put simply:  Clearview does not share or sell biometric information with its users.  Ex. 3 ¶ 6.

Confirming that Clearview's activities had a nationwide scope and did not target Illinois, Plaintiffs also allege that Clearview "gather[ed] information on millions of American citizens,"

"furnish[ed] this data to law enforcement agencies throughout the United States," "market[ed] its technology throughout the United States," and "executed agreements with hundreds of state actors in jurisdictions throughout the country." *Mutnick* FAC ¶¶ 2, 13, 38. In fact, Mutnick purports to "bring[] claims on behalf of all American citizens." *Id.* ¶ 8.

### C.    Plaintiffs File Similar Lawsuits Over The Next Three Months

After Mutnick filed his lawsuit on January 22, 2020, several other plaintiffs filed similar putative class actions against the Clearview Defendants. As the following chronology makes clear, the Southern District of New York—the only forum that undisputedly has personal jurisdiction over the Clearview Defendants—has become the center of gravity for disputes related to Clearview's business practices.

On February 3, 2020, Plaintiff Roberson filed a complaint in the Eastern District of Virginia, but the Clearview Defendants thereafter filed a motion to transfer to New York, arguing that the Clearview Defendants are not subject to personal jurisdiction in Virginia and that New York is the proper venue. *See Roberson v. Clearview AI*, *Inc*., No. 20-cv-00111-RDA-MSN (E.D. Va.), ECF Nos. 12–14.

On February 5, 2020, Plaintiff Hall filed the only other complaint against the Clearview Defendants in the Northern District of Illinois. *Hall v. Clearview AI, Inc.*, No. 20-846 (N.D. Ill.), ECF No. 1.

On February 13, 2020, Plaintiff Calderon filed a complaint in the Southern District of New York. *Calderon*, ECF No. 1.

On February 27, 2020, Plaintiff Burke filed a complaint in the Southern District of California, but he agreed to transfer his case to the Southern District of New York. *Burke*, ECF No. 17.

On March 12, 2020, Plaintiff Broccolino filed a complaint in the Southern District of New

York.  *Broccolino*, ECF No. 1.

On March 25, 2020, Plaintiff Twin City Fire Insurance Company filed a complaint in the Southern District of New York, which was subsequently voluntarily dismissed.  *Twin City Fire Ins. Co. v. Clearview AI, Inc.*, No. 7:20-cv-2570 (S.D.N.Y.), ECF No. 15.

On April 15, 2020, Plaintiff McPherson filed a complaint in the Southern District of New York.  *McPherson*, ECF No. 1.

### D.     Mutnick's Motion For Preliminary Injunction

Recognizing that litigation had become centered in New York, on April 8, 2020, almost three months after launching his litigation, Mutnick suddenly asserted he was facing imminent harm, and filed a motion for a preliminary injunction against the Clearview Defendants in Illinois. *Mutnick,* ECF Nos. 31-32, 39.  The timing of Mutnick's belated motion—within one day of when Plaintiff in *Calderon* sought to be appointed interim lead counsel by the Court—suggests it was intended not to address any imminent or ongoing harm, but rather to position Mutnick's counsel in a contest for appointment as lead counsel in this litigation.

### E.     Mutnick's Motion To Intervene

Confirming that the preliminary injunction motion was part of a broader litigation strategy, on April 21, 2020, Mutnick filed the instant motion to intervene and to dismiss the New York Actions, arguing that his first-filed case supported dismissal of the New York Actions.  In his motion papers, Mutnick emphasized that he had filed a motion for preliminary injunction, which purportedly showed that, unlike the New York Actions, "substantive action has taken place" in the Illinois Actions.  Mutnick Br. at 2.

The description that "substantive action" has occurred in the Illinois Actions is fanciful at best.  The reality is, other than a muddled motion for consolidation, which Mutnick later changed to a motion for reassignment after the court had already granted the motion to consolidate, very

7

little has happened in the Illinois Actions. *Mutnick*, ECF Nos. 34, 36, 38. Moreover, Judge Coleman in the Northern District of Illinois will likely not address Mutnick's preliminary injunction motion for several months (if ever) because the Northern District of Illinois has entered a General Order extending court deadlines due to the COVID-19 pandemic and because the Clearview Defendants have requested that Judge Coleman stay proceedings pending a decision on their motion to dismiss or in the alternative to transfer the Illinois Actions to New York (discussed below). *Mutnick*, ECF Nos. 30, 47.

The day after Mutnick moved to intervene, the Court issued an Order, which, among other things, (1) commented that Mutnick's case in Illinois "was far ahead of the cases in this court in terms of substantive activity"; (2) expressed the preliminary view that "either of the Illinois district courts seemed a more likely forum for the resolution of whether Illinois residents had been harmed by a violation of an Illinois statute"; and (3) directed Plaintiffs in the New York actions to respond to Mutnick's motion to intervene by April 29, 2020. *Calderon*, ECF No. 26.

F.      **The Clearview Defendants Have Moved to Dismiss the Illinois Actions for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue**

On April 27, 2020, the Clearview Defendants filed a motion to dismiss the Illinois Actions for lack of personal jurisdiction or, in the alternative, to transfer venue to New York. Ex. 1. The Clearview Defendants respectfully refer the Court to their memorandum of law in the Illinois Actions. Ex. 2. As described in Section B, *supra*, Mutnick fails to allege that the Clearview Defendants had any meaningful suit-related contacts with Illinois. For that reason, the Clearview Defendants requested that Judge Coleman dismiss the Illinois Actions or transfer the Actions to the Southern District of New York, where jurisdiction does exist over all of the Clearview Defendants, where other plaintiffs have filed four nearly identical putative class actions, and where Mutnick has already made an appearance.

In light of these threshold issues raised before Judge Coleman, the Clearview Defendants also filed a motion to stay the Illinois Actions pending a decision on the Clearview Defendants' motion to dismiss or transfer.  *Mutnick*, ECF No. 47.   This morning, Judge Coleman set a briefing schedule for that motion to stay and for the motion to dismiss or to transfer, the latter of which includes briefing through June 3, 2020.  *Mutnick*, ECF No. 53.

## ARGUMENT

The Court should deny Mutnick's motion to dismiss or transfer because a first-filed case should not receive deference when there are substantial questions concerning personal jurisdiction in the first-filed forum and because other relevant factors make New York the proper forum for these disputes.

## I.    The New York Actions Should Not Be Dismissed

### A.  Legal Standard

As Mutnick's own cases confirm, the "first-filed" rule is not a "rule" at all.  Rather, it is a "principle" that "embodies considerations of judicial administration and conservation or resources."  Mutnick Br. at 14 (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)).   In evaluating a first-filed argument, courts in this circuit "determine whether the balance of convenience or special circumstances militate against giving precedence to the first-filed action, since a court need not proceed by mechanical reference to filing dates." *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 440 (S.D.N.Y. 2000) (declining to apply first-filed rule).

"Special circumstances include situations where there is only a short span of time between the filing of the two actions, where there is a lack of progress in either litigation, or where the interest of justice favors" a later-filed action. *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) (internal citations

omitted), *aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010).  As discussed below, each of these circumstances favors keeping all the actions in New York.

Moreover,  the "balance of convenience" inquiry focuses on the same factors that apply when considering whether to transfer venue, including (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.  *Gokhberg v. The Pnc Fin. Servs. Grp., Inc.*, No. 15 CV 6001-LTS, 2015 WL 9302837, at \*2 (S.D.N.Y. Dec. 21, 2015).  Likewise, as discussed below, each of these factors strongly favors litigating these cases in New York.

### B.   The Clearview Defendants Are Not Subject to Personal Jurisdiction in Illinois

Crucially, courts do not give deference to first-filed cases where serious questions exist about personal jurisdiction in the first-filed forum.  *See, e.g.*, *Bear Stearns & Co. v. Tottenham Corp.*, No. 92 Civ. 4005 (JES), 1992 WL 365380, at \*1 (S.D.N.Y. Dec. 2, 1992) (declining to apply "first filed rule" where there was a "serious question" as to whether the first-filed forum had personal jurisdiction over the defendants); *AIDS Serv. Ctr. of Lower Manhattan, Inc. v. PharmBlue LLC*, No. 14-cv-2792 (SAS), 2014 WL 3778200, at \*4 (S.D.N.Y. July 30, 2014) (denying motion to dismiss or transfer second-filed action where a motion to dismiss the first-filed action for lack of personal jurisdiction was pending); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 748 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1978) (departure from first-filed rule was warranted where there was a "substantial question" whether the forum of the first-filed action had personal jurisdiction over defendants); *cf. Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*

*PA*, 306 F. Supp. 2d 346, 354–55 (S.D.N.Y. 2004) (declining to apply first-filed rule where it "would be a waste of judicial resources to send the parties back to" the forum of the first-filed action where they would be forced to litigate legal issues that would not need to be litigated in the forum of the second-filed action).

The Clearview Defendants' motion to dismiss for lack of personal jurisdiction in the Illinois Actions demonstrates that personal jurisdiction does not exist as to them in Illinois.  As for Messrs. Ton-That and Schwartz, the Illinois Actions do not contain a single allegation connecting them to Illinois based on their individual conduct.  Ex. 2 at 7–8.  As for Clearview, the jurisdictional allegations fail because (1) relying on Plaintiffs' own activities or the activities of third parties cannot support jurisdiction and (2) Plaintiffs' own allegations confirm that Clearview's activities had a nationwide scope and did not target Illinois.  *Id.* at 7–12.  In light of these threshold jurisdictional issues, the Court should reject the application of any first-filed rule.

None of the cases cited by Mutnick supports a contrary result, since none of them involved a challenge to personal jurisdiction in the first-filed forum.  In fact, in the only case Mutnick cites that addresses personal jurisdiction, the court applied the first-filed rule because there was a dispute about personal jurisdiction in the second-filed forum.  *First City Nat'l Bank*, 878 F.2d at 78–79.

### C.  No Substantive Progress Has Been Made in Any Case

Moreover, the efficiency concerns underlying a first-filed rule are not present in this case.  A primary purpose of a first-filed rule is "to avoid the inefficiency and wastefulness of allowing duplicative litigation to proceed in two different fora."  *Invivo Research*, 119 F. Supp. 2d at 440.  But "where suits are filed in quick succession and/or the court with the first filed action has done little with respect to it, the rule carries less weight."  *Am. Steamship Owners*, 474 F. Supp. 2d at 489 ("Here, the fact that the direct actions began little more than a month before the American Club filed the instant action, and that Chief Judge Berrigan has not devoted significant judicial

resources to the direct action claims against the American Club or developed any expertise with regard to the insurance coverage issues, give the first-filed rule still less force."); *see also Invivo Research*, 119 F. Supp. 2d at 441 (declining to apply first-filed rule where discovery, hearings, or conferences had not occurred in either action).

The various cases here were filed within the span of a few weeks of each other, and there has been no substantive progress in any actions.  Indeed, the Clearview Defendants have not filed any responsive pleadings yet, discovery has not begun, and Judge Coleman has not issued any substantive rulings.  The Clearview Defendants recognize that the Court made a preliminary observation that the Illinois Actions were "far ahead of the cases in this court in terms of substantive activity," presumably based on Mutnick's incomplete description of those proceedings, but the Clearview Defendants respectfully submit that that is not so.  As set forth above, the only "substantive activity" in the Illinois Actions is Mutnick's belated filing of a preliminary injunction motion, as to which the briefing is ongoing, unless stayed pending the jurisdictional motion filed by the Clearview Defendants.  No hearing has been set, and the briefing schedule itself has been enlarged as a result of COVID-related general orders in the Northern District of Illinois.

### D.  The Operative Facts Occurred in New York

"The locus of operative facts is a 'primary factor' in determining whether to transfer venue." *Am. Steamship Owners*, 474 F. Supp. 2d at 485.  Clearview is headquartered in New York, and the majority of its employees work here.  The claims focus on Clearview's alleged unlawful collection, processing and storage of photographs, and its licensing of an online app that allows for the search of publicly available images from anywhere in the country.  Any collection of images occurred from Clearview's offices in New York, any processing of images occurred in the same location, any storage occurred on Clearview's servers in New York and New Jersey, and any

access to the online app was made available from Clearview's headquarters in New York to any licensed user anywhere in the country.  Accordingly, the locus of operative facts is New York, which is the location of Clearview's "corporate headquarters and executive decisionmakers." *Gokhberg*, 2015 WL 9302837, at *2 (declining to apply first-filed rule where locus of operative facts was defendant's headquarters, which were in the jurisdiction of the second-filed action).

Mutnick's argument that Clearview "targeted [its] unlawful conduct at Illinois governmental agencies" and entered into contracts with Illinois citizens does not support a contrary result.  Mutnick Br. at 17.  Mutnick's own allegations confirm that Clearview's activities were nationwide in scope and did not, in fact, target Illinois.  Mutnick alleges that Clearview "gather[ed] information on millions of American citizens," "furnish[ed] this data to law enforcement agencies throughout the United States," "market[ed] its technology throughout the United States," and "executed agreements with hundreds of state actors in jurisdictions throughout the country." *Mutnick* FAC ¶¶ 2, 13, 38.  In fact, Mutnick purports to "bring[] claims on behalf of all American citizens." *Id.* ¶ 8.  "Where a party's products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." *Invivo Research*, 119 F. Supp. 2d at 439-40.

Mutnick also argues that Clearview does not yet appear on the New York Department of State's public website, Mutnick Br. at 3, but this was due to a clerical error.  In any event, registration does not determine principal place of business as a matter of law.  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93, 97 (2010) (holding that a "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities" and rejecting the notion that a "mere filing" affects this inquiry).

### E.   The Convenience of Parties and Witnesses Favors New York

Moreover, a forum that serves the convenience of the parties and key witnesses can take priority over the forum where an action was first filed.  *See River Rd. Int'l, L.P. v. Josephthal Lyon & Ross Inc.*, 871 F. Supp. 210, 214 (S.D.N.Y. 1995) (declining to apply first-filed rule where most defendants and non-party witnesses were residents of jurisdiction where second action was filed).

The claims in this action focus on the conduct of Clearview, and have little to do with plaintiffs' actions.  Accordingly, the Southern District of New York is far more convenient than the Northern District of Illinois because (1) Clearview is headquartered in New York, (2) the activities relevant to this case (*i.e.*, Clearview's business operations) took place in New York, (3) Clearview's employees are in New York, and (4) the relevant evidence is located, accessed, or managed in New York.

Mutnick argues that potential witnesses include named Plaintiffs (who are Illinois residents), members of the Chicago Police Department, and Defendant CDW-G, which is headquartered in Illinois, but the convenience of these potential witnesses is secondary where all the challenged activities focus on Clearview's conduct and took place in New York.  Mutnick Br. at 17; *Lynch ex rel. Tr. of Health & Welfare Fund of Patrolmen's Benevolent Ass'n of City of New York & Retiree Health & Welfare Fund of Patrolmen's Benevolent Ass'n of City of New York v. Nat'l Prescription Adm'rs*, No. 03 Civ. 1303 (GBD), 2004 WL 385156, at *2 (S.D.N.Y. Mar. 1, 2004) (explaining that the "nature and importance of a potential witness's testimony" are relevant considerations).  Moreover, witnesses from the Chicago Police Department presumably constitute only a small subset of the witnesses from the "hundreds of state actors in jurisdictions throughout the country" and the "law enforcement agencies throughout the United States" on whose behalf Clearview allegedly acted in harming the plaintiffs.  *Mutnick* FAC ¶¶ 2, 38.

### F.   Plaintiffs in the New York Actions Selected New York as a Forum

"The Second Circuit has consistently held that a plaintiff's choice of forum is presumptively entitled to substantial deference." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009). Plaintiffs in the New York Actions have chosen to litigate in New York, and that decision is entitled to deference, certainly no less deference than to Mutnick's preference, as there is no evidence that they have engaged in forum shopping. To the contrary, they are pursuing their claims in the only forum that has personal jurisdiction over the Clearview Defendants. Indeed, only one Plaintiff has made the trip to a different forum: Mutnick. He has therefore shown a willingness and ability to litigate in this forum, whereas the Plaintiffs who filed in New York presumably are not amenable to transfer to Illinois.

### G.   Other Factors Are Negligible or Neutral

Mutnick argues that a "federal court in Illinois is likely more experienced and better positioned to interpret" BIPA, Mutnick Br. at 18, but federal courts regularly interpret laws from other states, including BIPA. *See, e.g., Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12 (2d Cir. 2017) (affirming dismissal of BIPA claims); *Gullen v. Facebook, Inc.*, 772 F. App'x 481, 482 (9th Cir. 2019) (affirming summary judgment of BIPA claim). Moreover, Mutnick asserts several federal constitutional claims, and where federal law governs, "any district court may handle [the] case with equal skill." *Invivo Research*, 119 F. Supp. 2d at 439.

In addition, "[t]he relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties." *AIDS Serv. Ctr.*, 2014 WL 3778200, at *6. Mutnick does not provide any information about his financial means, but contends that because he and the class members are individuals, they lack the "relative means" to litigate their case in New York. Mutnick Br. at 18. But Mutnick ignores the burden that would be imposed on the more numerous New York litigants and their counsel if his motion were to be

granted, and has in any event, already appeared before the Court.  As to the putative class, members have already filed more cases against Clearview Defendants in New York than in Illinois, confirming that they have willing representatives who are prepared to, and affirmatively wish to, litigate here.

For all these reasons, the Court should deny Mutnick's (1) motion to dismiss based on a first-filed rule and (2) motion to transfer or stay these actions if the Court determines that a first-filed rule does not apply.

## II.     Alternatively, The Court Should Defer Decision on Mutnick's Motion to Dismiss

Alternatively, the Court should defer a decision on Mutnick's motion to dismiss until after Judge Coleman decides the Clearview Defendants' pending motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer the Illinois Actions.  *See First City Nat. Bank & Trust Co. v. Simmons*, No. 88 CIV. 3117 (CSH), 1988 WL 125682, at *3 (S.D.N.Y. Nov. 4, 1988) (staying second-filed action until court handling first-filed action could evaluate motion to dismiss for lack of personal jurisdiction).  If the Illinois Action is dismissed or transferred, Mutnick's first-filed argument will become moot.  *See Advanced Water Techs. Inc. v. Amiad U.S.A., Inc.*, No. 18-CV-5473 (VSB), 2019 WL 4805330, at *6 (S.D.N.Y. Sept. 30, 2019) (denying first-filed argument as moot where the first-filed action had been dismissed for lack of personal jurisdiction).

## CONCLUSION

For all these reasons, the Court should deny Mutnick's motion to dismiss, transfer, or stay the New York Actions.  Alternatively, the Court should defer decision on Mutnick's motion until Judge Coleman decides the Clearview Defendants' pending motion to dismiss for lack of personal jurisdiction, or, alternatively to transfer the Illinois Actions to New York.

DATED: April 29, 2020                     Respectfully submitted,

                                          JENNER & BLOCK LLP

                                          By: _/s/ Lee Wolosky_____

                                          Lee S. Wolosky
                                          Andrew J. Lichtman
                                          JENNER & BLOCK LLP
                                          919 Third Avenue
                                          New York, New York 10022-3908
                                          Phone: (212) 891-1600
                                          lwolosky@jenner.com
                                          alichtman@jenner.com

                                          *Attorneys for Defendants Clearview AI, Inc.,*
                                          *Hoan Ton-That, and Richard Schwartz*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 29, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.


By: _/s/ Lee Wolosky_____

Lee S. Wolosky